# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

IN RE SUSAN L. GILBERTSON,

    William A. Rinehart, Appellant.

    Case No. 06-C-610

## DECISION AND ORDER

Appellant William A. Rinehart appeals an order of the United States Bankruptcy Court for the Eastern District of Wisconsin, which reduced the fees owed him by the bankruptcy trustee for his efforts in recovering $12,500 that the debtor had fraudulently transferred to a Wisconsin attorney.[1] Rinehart succeeded in recovering $10,000 on the claim. Under Rinehart's one-third contingency fee arrangement with the trustee, which the bankruptcy court had earlier approved, Rinehart sought $3,333.34 in compensatory fees. However, the court awarded him only $1,890 after finding that Rinehart was able to settle the claim earlier and more easily than expected. Rinehart appealed, claiming that the bankruptcy court erred in reducing his fee by $1,443.34.

Rinehart timely filed his brief on June 2, 2006. Neither the trustee, nor the debtor has elected to respond, and the time for doing so has long since expired. Accordingly, the matter is ripe for decision. For the following reasons, the order of the bankruptcy court will be vacated, and the bankruptcy court will be directed to order payment of the amount he seeks.

---

[1] The case was originally assigned to Judge Adelman in the Milwaukee Division of the District. Upon consideration of the fact that the debtor resides in Shawano County, the case was reassigned to the Green Bay Division pursuant to the General Order Regarding Assignment of Cases to the United States District Judge Designated to Hold Court in Green Bay, Wisconsin.

## FACTUAL BACKGROUND

The bankruptcy trustee, Douglas Mann, attempted to recover an allegedly fraudulent transfer of $12,500 by the debtor to an attorney ("the transferee") in Appleton, Wisconsin. Mann sent a demand letter to the transferee on February 16, 2005, and, after receiving no response, sought to hire counsel. Mann received two proposals in his search for counsel, the less expensive of which was Rinehart's. Mann applied to the bankruptcy court for leave to hire Rinehart, who offered his services to Mann at a 33% contingency fee plus expenses. On March 18, 2005, the bankruptcy court authorized Mann to employ Rinehart "on the terms and conditions set forth in the Application," and "subject to the provisions of 11 U.S.C. § 328(a)." (Order Authorizing Trustee to Employ William A. Rinehart ¶¶ 1, 3; Dkt. #1, Attach. 4.)

Rinehart was able to recover $10,000 of the $12,500 claim for Mann. Later, Mann sought approval from the bankruptcy court of his final account, which included payment of Rinehart's contingency fee of $3,333,34. The total time Rinehart billed for his services, according to billing records he submitted, was 2.7 hours, most of which involved placing several phone calls and drafting and sending a couple of letters. This translates to roughly $1,235 per hour. Notice of Mann's application for approval of his final account was given to creditors and parties in interest, and no objections were filed.[2]

---

[2] As to the outcome of the bankruptcy, the debtor turned over to a credit union her deed to a lakefront lot in lieu of foreclosure of same. Proceeds generated from the credit union's sale of the lot will be sufficient to pay all creditors' claims. (Memorandum Decision at 1-2; Dkt. #1, Attach. 7.) Appellant notes that the $10,000 he recovered will also help to satisfy creditors' claims. (Appellant's Br. at 7 n.5.)

2

The bankruptcy court held a hearing on Rinehart's application for compensation, and on March 29, 2006, ordered Rinehart's fees reduced to $1,890 on account of the speed and ease with which Rinehart was able to settle the claim. It is from this order that Rinehart appeals.

**ANALYSIS**

Federal district courts have jurisdiction to hear appeals of bankruptcy court orders under 28 U.S.C. § 158(a). A reviewing federal court examines a bankruptcy court's determination of attorney fees for abuse of discretion or erroneous application of the law. *In re Bertola*, 317 B.R. 95, 99 (B.A.P. 9th Cir. 2004). Such review is *de novo*. *Id.* The reviewing court accepts the bankruptcy court's factual findings unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *Matter of Excalibur Auto. Corp.*, 859 F.2d 454, 457 n.3 (7th Cir. 1988).

Two sections of the bankruptcy code are especially relevant where, as here, the appellant is challenging the court's reduction of contingency fees it had earlier approved. The first relevant section deals with situations in which the bankruptcy trustee hires a professional under a compensation arrangement that is pre-approved by the court:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the finding of such terms and conditions.

11.U.S.C. § 328(a). Also relevant here is § 330, which addresses the reasonableness standard a court is to employ when awarding fees to hired professionals:

3

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103--
>
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>>
>> (B) reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested.

11 U.S.C. § 330(a)(1)-(2).

In other words, after a court has approved the trustee's hiring of an outside professional under § 328(a), it may alter the fees due the professional only where the terms and conditions of the arrangement prove to have been improvident in light of *developments that could not have been anticipated*. If such developments have not occurred, the court may not revisit its prior authorization; on the other hand, if such developments have occurred (or if the fees applied for were not pre-approved), the court looks to § 330 and may adjust the fees so that they are reasonable. *In re Fed. Mogul-Global, Inc.*, 348 F.3d 390, 397 (3d Cir. 2003); *see also In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000) (stating that "a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328"); *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003) (stating that "[u]nder Section 328, an attorney or other professional may avoid . . . uncertainty by obtaining approval of her representation and fee arrangement prior to performing the contemplated services"); *In re Benassi*, 72 B.R. 44, 47 (D. Minn. 1987) (stating that "§ 330(a)(1) does not supplant § 328(a) and give the [bankruptcy] judge free reign to void a previously authorized employment agreement for a percentage fee").

4

Thus, a bankruptcy court must approve a professional's application for compensation either under the reasonableness standard of § 330(a)(1) or under the "improvident" standard of § 328(a), but not both. The bankruptcy judge deviated from this rule, under the mistaken impression that while "some courts interpret the 'subject to' language [of § 330] as precluding a court from altering the compensation of a professional employed under § 328(a) based on a 'reasonableness review,' . . . [c]ourts in the Seventh Circuit have not gone so far in finding § 328(a) fee arrangements 'bulletproof.'" (Memorandum Decision at 3; Dkt. #1, Attach. 7.) However, the cases cited by the bankruptcy judge do not support the supposed flexibility of Seventh Circuit courts to ignore the clear statutory language.

For example, the bankruptcy judge quoted the following from the Seventh Circuit's decision in *In re Lytton's*, 832 F.2d 395 (7th Cir. 1987): "[S]ection 328 read in conjunction with section 330 contemplates that an attorney seeking a contingent fee payment still must apply to the bankruptcy court and . . . the language of section 328 expressly allows setting a rate of payment at the beginning of an attorney's employment that may later be changed." *Id.* at 400. However, nothing in this quotation or elsewhere in the opinion supports the bankruptcy judge's conclusion. The quotation does not address the *conditions* under which a bankruptcy court may later change an approved fee arrangement; it simply notes that revision of such an arrangement is authorized by section 328.[3]

Similarly, the other cases cited by the bankruptcy judge do not buttress her decision. For example, in *In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. 893, 899 (Bankr. N.D. Ill. 1989), the court reduced a pre-approved fee, but did so explicitly on the grounds that later developments,

---

[3] Moreover, in *In re Lytton's*, the main issue was whether the bankruptcy court's order was final (and therefore appealable); the creditor-appellant was simply pointing to the court's approval of a contingency fee arrangement as proof of the order's finality. *Id.* at 399-400.

5

which could not have been foreseen at the time the fees were fixed, made the fee arrangement improvident. A pre-approved compensation arrangement was likewise reduced by the court in *In re Begun*, 162 B.R. 168 (Bankr. N.D. Ill 1993). But the court first noted the rule that absent developments that could not have been foreseen, a court may not override its previous order authorizing a compensation arrangement. *Id.* at 178 (citing 11 U.S.C. § 328(a); *In re Confections by Sandra, Inc.*, 83 B.R. 729 (B.A.P. 9th Cir. 1987)). Applying this rule, the court found that the real estate broker's compensation arrangement, which the court had previously approved, was improvident "in light of the subsequent facts learned," which included disclosure of improper ties between the broker and the trustee's law firm. *Id.* at 178-80. *In re Amer. Mortgage & Inv. Servs.*, 158 B.R. 43 (Bankr. D.N.J. 1993) is distinguishable from the facts of this case, for there the court explicitly withheld approval of the contingency fee, and instead merely approved retention of the applicant and reserved the commission for further consideration. *Id.* at 45.

The bankruptcy judge also cited for support *In re Gen. Oil Distribs.*, 51 B.R. 794 (Bankr. E.D.N.Y. 1985), in which the court reduced the professional's fee request by 10% for lack of success in litigation, disparity between the amount requested and the lower amount charged by another firm that was more successful in the same litigation, and concern over eviscerating the bankruptcy estate. However, while the court did approve the applicant to act as counsel, the court made no mention as to whether the applicant's compensation arrangement was pre-approved, and instead simply proceeded with ascertaining a reasonable fee under the so-called "lodestar" analysis.[4]

---

[4] The "lodestar" is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is then adjusted to reflect other factors such as the contingent nature of the suit and the quality of the representation. *See Copeland v. Marshall*, 641 F.2d 880, 891-94 (D.C. Cir. 1980)

6

*Id.* at 799.  In *In re Humbert*, 39 B.R. 643 (N.D. Ohio 1984), also cited by the bankruptcy judge, the reviewing district court upheld the bankruptcy court's reduction of the applicant's fees on the ground that § 330 allows the court to adjust any fee such that it is reasonable.  *Id.* at 645.  However, the court did not pre-approve the contingency arrangement, *In re Humbert*, 21 B.R. 489, 494 (Bankr. N.D. Ohio 1982).  In fact, the trustee (who was also working as his own attorney in the matter) did not disclose the contingency fee arrangement until he applied to the court for payment. *Id.* at 494.  Furthermore, the precedential weight of *Humbert* has been nullified by the Sixth Circuit, which has expressly rejected application of the reasonableness standard under § 330(a) to compensation arrangements pre-approved under § 328(a).  *See In re Airspect Air, Inc.*, 385 F.3d 915, 920-21 (6th Cir. 2004).

Finally, there is controlling precedent in this district.  In *F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.*, 350 B.R. 835 (E.D. Wis. 2006) the court held that absent unanticipatable developments, a court may not modify, under § 330(a), a professional's compensation arrangement that was pre-approved under § 328(a).  *Id.* at 839.

In the instant case, the bankruptcy judge opined that if a § 328(a) appointment forecloses a court from reviewing the reasonableness of compensation under § 330(a), there would seemingly be no need to require an applicant to submit detailed fee applications listing hours worked and services rendered.  However, this requirement makes perfect sense in light of the court's duty under § 328(a) to reevaluate the fee arrangement where it proves to be improvident in light of unanticipatable developments.  *See In re Malcon Developers, Inc.*, 138 B.R. 677, 680-81 (Bankr. N.D.N.Y. 1992).

7

I now turn to address whether the bankruptcy judge pre-approved Rinehart's application, and whether any unanticipatable developments occurred that rendered Rinehart's compensation arrangement improvident. "Whether a bankruptcy court can be said to have pre-approved a professional's request for compensation under § 328(a) depends on the documents governing the professional's retention." *F.V. Steel & Wire*, 350 B.R. at 839. Here, the engagement letter and Rinehart's retention application did not clearly indicate that Rinehart was seeking approval under § 328, but given the straight 33% contingency fee set forth in the application, the bankruptcy court proceeded on the assumption that Rinehart sought approval under § 328. (Memorandum Decision at 2 n.1; Dkt. #1, Attach. 7.) I find such an assumption was warranted. Furthermore, the bankruptcy court approved Rinehart's application "on the terms and conditions set forth in the Application," and "subject to the provisions of 11 U.S.C. § 328(a)." In fact, the court even quoted the "improvident" statutory language in its order approving the trustee's retention of Rinehart. (Order Authorizing Trustee to Employ William A. Rinehart ¶ 3; Dkt #1, Attach 4.) The court gave no indication in its order that it intended to later review the application under § 330. The court was therefore obliged to review Rinehart's application under the "improvident" standard of § 328(a), for "if the retention documents indicate that review under § 328(a) is intended, a bankruptcy court may not review a fee application for reasonableness under § 330 unless it *unambiguously* states in the retention order that it intends to do so." *F.V. Steel & Wire*, 350 B.R. at 840 (emphasis added).

As the bankruptcy court was obliged to review Rinehart's application under § 328(a), the contingent fee could be modified only upon a finding that unanticipatable developments had occurred subsequent to the court's approval of the application. However, the bankruptcy court noted no such developments. That Rinehart settled the claim quickly and easily was not a

8

development "not capable of being anticipated" at the time his application was approved. It might have been unanticipated (by the court and/or by Rinehart), but that is not the test. The record shows that Rinehart is an experienced collection attorney. (Memorandum Decision at 1; Dkt. #1, Attach. 7.) The transferee from whom he was attempting to recover was herself an attorney, and she likely realized after just a few phone calls and letters from Rinehart that the transferred funds should be returned.

A bankruptcy court allows retention of collection attorneys on a contingency fee basis to avoid the risk of decreasing the estate by costs of collection. The possibility of obtaining payment without the expenditure of substantial time and effort compensates the collection attorney for the risk of nonpayment or payment only after the expenditure of disproportionate work and effort. In short, the "winner" cases offset the "dogs," where no fee, or a fee that fails to fully compensate counsel for the time and effort expended, is earned. When counsel is successful, the contingent fee can appear excessive in hindsight, but early success by counsel is always a possibility capable of being anticipated. In any event, the rationale behind § 328(a) is less important here than the fact that the statutory language clearly allows a court to approve a contingent fee arrangement for a professional employed by the trustee. And if it does so without unambiguously expressing an intent to review under the reasonableness standard of § 330, the court may not subsequently reform the compensation absent developments that could not have been anticipated at the time of approval.

**CONCLUSION**

Because the bankruptcy court improperly reviewed appellant's pre-approved compensation arrangement under the reasonableness standard of § 330 rather than under the "improvident"

9

standard of § 328, and because the record is without evidence that appellant's quick and easy collection was a development incapable of being anticipated, the order of the bankruptcy court is vacated. The bankruptcy court shall direct payment of $1,443.34 to appellant from the bankruptcy estate.

**SO ORDERED** this   4th   day of February, 2007.

       s/ William C. Griesbach
       William C. Griesbach
       United States District Judge